## Keller *versus* Rhoads.

*Consideration to sustain Action for Money had and received.—Conditional Verdict in* Indebitatus Assumpsit.—*Statute of Limitation as against indemnified Surety.*

1. By agreement between the committee of a lunatic entitled to a bequest under a will proved in Ohio, the surety on his official bond who was uneasy as to his suretyship, and another ; the latter was to go to Ohio, receive the money due, by power of attorney from the committee, and retain it subject to the order of the surety, and until he was released from his suretyship. The agent of the committee received the money, but did not retain it, paying it, the same year, to the committee.   After account filed, the balance thereon was not paid, and suit was commenced on the bond ; before judgment against the surety, he brought an action of *indebitatus assumpsit* against the agent,

[Keller *v.* Rhoads.]

to recover the amount received by him in Ohio, relying upon the common counts. *Held,* that an action for money had and received to his use, might be sustained by the plaintiff, and that there was a sufficient consideration for the promise of the defendant.

2. If a principal deposit money for the protection of his surety, there is a sufficient consideration for the act, in the relations of the parties: and the bailee receiving it from the principal, or by his order, for the indemnity of the surety, thereby becomes the bailee of the surety—the receipt of the funds being in itself a consideration for a promise to pay the surety the amount of the deposit.

3. Where the money, to be retained, under the agreement, in the custody of the defendant until the plaintiff should be discharged from his liability or damnified; was received by the defendant in 1846, the Statute of Limitations did not begin to run in his favour from that date: for the plaintiff had no right of action until his liability was fixed by the settlement, in 1858, of the account of the committee whose surety he was.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of trespass on the case, by Samuel Rhoads against Jacob Keller.

The material facts of the case are these:—In 1844, John Keller, a son of the defendant, was appointed committee of the person and estate of Henry Kenaga, a lunatic, and gave bond in the usual form, with Samuel Rhoads as his surety. The lunatic was entitled to a legacy under the will of his father, who died in Ohio. Mr. Rhoads, being apprehensive that Keller would not appropriate this legacy properly, objected to his receiving it without some additional security. The parties called on Jacob Keller, the defendant in this suit, and requested him to unite with John Keller in a bond of indemnity to Rhoads, which he declined; but it was then and there agreed that Jacob Keller should take a power of attorney from John Keller, proceed with it to Ohio, receive the legacy, and retain it until Rhoads should be released from his suretyship or should give to John Keller an order to draw the money. This took place in January 1846. Jacob Keller went to Ohio as attorney for John, drew on account of the legacy $408.95, which, in June 1846, he handed over to John Keller, knowing that he intended to use it for the payment of a private debt to the Chambersburg Bank.

In 1852 John Keller became insolvent, but continued to act as committee of Henry Kenaga until 1858, when his account was audited, showing in his hands a balance of $523.13.

To recover this balance suit was brought by the administrator of Henry Kenaga against John Keller and Samuel Rhoads, on their bond, to November Term, 1858, No. 43, on which there was an award in favour of plaintiff. Keller did not appeal, but Rhoads did; against whom there was a verdict and judgment, December 19th 1860, for $634.91.

This suit was brought to January Term, 1859, by Rhoads against Jacob Keller, as above stated (and was subsequently

[Keller *v.* Rhoads.]

marked for the use of the administrator of Henry Kenaga, who sought to recover a verdict for the amount of money so as aforesaid received by defendant, to be released on payment of the judgment which had been obtained by Kenaga's administrator against Rhoads, the surety of John Keller.

The following points were submitted to the court.

The plaintiff's counsel requested the court to charge, that, if the jury believe that the plaintiff, Samuel Rhoads, was the surety of John Keller, the committee of Henry Kenaga, a lunatic, and desired to be relieved of his suretyship, and it was agreed between the said John Keller and the said Samuel Rhoads, that he should be relieved, and for that purpose gave a power of attorney to Jacob Keller, the present defendant, to receive a part of the trust fund in consideration and for the purpose that he should hold the said fund as an indemnity to and for the said Samuel Rhoads, as the surety of John Keller, on his bond as the committee of Henry Kenaga; and the said Jacob Keller then and there, before the said money was received, promised and agreed that he would not pay it over to the said John Keller, but would hold it as indemnity to the said Samuel Rhoads for his liability as surety of John Keller; and if the jury believe that the said Jacob Keller did receive the money upon the power of attorney referred to, and, in violation of his agreement with Samuel Rhoads, has actually paid it over to John Keller, who is now and has been insolvent for many years; and if it further appears that Samuel Rhoads has been actually sued upon his bond as surety of John Keller, and a judgment recovered against him, which is now ripe for execution; then the plaintiff is entitled to recover in this action a verdict for the amount of the money so paid to the said Jacob Keller, conditioned to be released upon the payment of the amount of the verdict and judgment in the action of Todd, administrator of Kenaga, *v.* Samuel Rhoads, which is for a less amount than the claim in this action.

The defendant's counsel presented the following points :—

1. That an action cannot be commenced before the cause of action accrues; and as the plaintiff now asks to recover from the defendant a sum of money which was not adjudged to be due by him when he commenced this suit, he cannot recover.

2. That a surety's cause of action against a co-surety for contribution, accrues when he has paid the debt of his principal, and not before, and the evidence in the cause shows that the plaintiff has not paid the money which he seeks to recover from the defendant, and cannot, therefore, maintain his action.

3. That there can be no recovery by the plaintiff against the defendant, under the evidence in the cause upon the declaration filed, and under which the issue is made up.

4. That the relations of parties to the issue trying, having

[Keller *v.* Rhoads.]

been fixed before the cause was marked, for the use of the administrator of Henry Kenaga, deceased, the cause must be tried between them as it originally stood; and if the plaintiff could not recover before it was so marked, he cannot now.

5. That there is no consideration for the promise on which plaintiff has based his cause of action against the defendant.

6. That if John Keller gave defendant a power of attorney to receive the sum of $405 in Ohio, and he did so receive it, and afterwards paid over that amount to his principal at his request, and that is the same money which the plaintiff now seeks to recover in this action, the defendant is not liable.

7. The Statute of Limitations is a bar to the claim of the plaintiff in this action.

The court below (GRAHAM, P. J.) affirmed the point submitted by plaintiff, and answered defendant's points as follows:—

"1. An action cannot be commenced before the cause of action accrues, but the plaintiff had a cause of action when he commenced this suit.

"2. The law is here correctly stated as to co-sureties. But this is not the case of co-sureties for a common debtor, and the point is, therefore, inapplicable to this case.

"3. This action for money had and received is assimilated by our courts to a proceeding in equity, and may be used to supply the place of a bill in a court of equity, where a proper case is presented; and, under the evidence in this case, we think the present action may be sustained.

"4. This is correct. If plaintiff could not recover as the suit was originally brought, marking it for the use of the administrator of Henry Kenaga, deceased, would not enable him to do so.

"5. The facts proved show a consideration sufficient to sustain the action. If Rhoads, the surety, agreed that Keller should receive this money, which he might have prevented by a proceeding to be discharged as surety, upon the promise that Keller would not pay it to the committee without Rhoads's order or consent, this would be a sufficient consideration.

"6. We cannot answer this as requested. If Keller paid it over contrary to the contract and understanding of all the parties, and upon which he received, he may be held liable.

"7. The action accrued in this case upon the settlement of the account of the committee when his indebtedness to the estate was ascertained, and not before. This was in 1858; consequently the Statute of Limitations will not bar a recovery."

Under these instructions the jury found for the plaintiff the sum of $759.56, to be released upon the payment of judgment No. 43, November Term, 1858, with costs; on which verdict judgment was entered.

The defendant thereupon sued out this writ, assigning as cause

[Keller v. Rhoads.]

for reversal here that the court below erred, in affirming the plaintiff's point, and in their answers to defendant's 3d, 5th, 6th, and 7th points.

*Sharpe*, for plaintiff in error.—The verdict given by the jury, when viewed in reference to the declaration, will not sustain a judgment. The verdict is conditional; the declaration is not special, but simply in *indebitatus assumpsit* on a common money count.

Conditional verdicts in ejectment have been recognised: Coolbaugh *v.* Pierce, 8 S. & R. 418; but they are not of universal application: Irvine *v.* Bull, 4 Watts 289; and are never allowed except where the whole ground of plaintiff's equitable right is set out in his declaration: 1 T. & H. Pr. 120; Morrison *v.* Buckley, 7 S. & R. 238; Kearney *v.* Tanner, 17 Id. 94; Whitman *v.* Ely, 4 Id. 266, 267; Huber *v.* Burke, 11 Id. 245; Butcher *v.* Metts, 1 Miles 155; Jordan *v.* Cooper, 3 S. & R. 578, *et supra*. The finding of the jury should have been absolute. The issue joined between the parties forbade any other.

To recover on a general count for money paid or received, there must have been an actual advance of money: Purcel *v.* Ellis, 5 W. & S. 525; Doebler *v.* Fisher, 14 S. & R. 179; Kearney *v.* Tanner, 17 Id. 98; Arch. Nisi Prius 252; which was not this case, nor was there any consideration to support this action, as stated by the court below. The surety of Keller had no power to prevent him from receiving this legacy. He was entitled to the money as principal, and could demand it of Jacob Keller his attorney in fact. He did demand it, and it was paid to him by his attorney, who cannot now be required to pay it over again to the surety of his principal. The relation of principal and attorney which existed between these parties was entirely overlooked by the court. Jacob Keller's liability was to John exclusively: Story on Agency, § 217. Nor is he liable to any one after paying his principal: Dyer 230; 1 Stra. 480; 2 Lord Raymond 1212; 4 Burr. 1985. But the Statute of Limitation was a bar, and so the court below should have held. The money was received February 9th 1846, and was paid June 26th 1846; and even if the action was like a bill in equity, the statute is a bar in equity: Kane *v.* Bloodgood, 7 Johns. Ch. Rep. 113, 118. Nor does this case resemble those of trusts which are not reached by the statute: Lockey *v.* Lockey, Prec. in Ch. 518; Stuart *v.* Mellish, 2 Atkyns. 610; Kane *v.* Bloodgood, 7 Johns. Ch. Rep. 116; Lausett's Equity, vol. 1, 246; Lyon *v.* McClay, 1 Watts 271; Zacharias *v.* Zacharias, 11 Harris 455; Finney *v.* Cochran, 1 W. & S. 118; Agnew *v.* Fetterman, 4 Barr 56; Kirkpatrick *v.* McDonald, 1 Jones 392.

The claim is barred twice over in this case. Six years elapsed

between the payment of the money to the principal and his insolvency, and seven more have passed away before it was demanded of the attorney by the plaintiff in this suit.

*John Williamson* and *Frederick Watts,* for the defendant in error, argued, that the liability of Rhoads, as surety for John Keller, was a sufficient consideration for his agreement that the money received on the letter of attorney should have been held as an indemnity to Rhoads for his suretyship, and that the receiving of the money by Jacob Keller under the power of attorney, on his express promise to Rhoads to hold it as such indemnity, was a sufficient consideration for the promise, and constituted a valid agreement, binding on Jacob Keller, so to hold the money thus received : Cutler *v.* Dickinson, 8 Mass. 386. It was money received by him for the use of Rhoads : Hall *v.* Marston, 17 Mass. R. 575.

Rhoads was not bound to pay the surety debt before bringing this suit : 2 Story's Eq. 850 ; Ranelaugh *v.* Hayes, 1 Vern. 189 ; Rockfeller *v.* Donnelly, 8 Cow. 626 ; 2 Story's Eq. 730. The action is of the most liberal nature, and is founded on the privity of contract between them : Fleming *v.* Alter, 7 S. & R. 295 ; Morris *v.* Tarin, 1 Dall. 148 ; Bixler *v.* Kunkle, 17 S. & R. 298.

The Statute of Limitation does not apply. The intention of the agreement manifestly was that defendant should retain the money until it should be wanted as an indemnity to plaintiff. Action did not therefore accrue until the confirmation of the committee's account in November 1858 : see Johnson *v.* Humphreys, 14 S. & R. 394.

As to the verdict, the defendant has no cause of complaint. The condition is for his benefit, while the matters which led to it were few, incontrovertible, definite, and open on the face of the record, and plainly concurred to indicate the condition of the verdict, as requisite and suited to effectuate a fair adjustment. It is sustained by authority : Bixler *v.* Kunkle, 17 S. & R. 307.

The opinion of the court was delivered, June 5th 1861, by
STRONG, J.—This was an action for money had and received, in which the plaintiff relied exclusively upon the common count in *indebitatus assumpsit.* The case as exhibited by the evidence was, that a certain John Keller had been appointed committee of a lunatic, and that the plaintiff had become surety in his bond. The lunatic was entitled to a sum of money from the executor of a will proved in the state of Ohio. In 1846, the plaintiff became uneasy respecting his suretyship, and it was then agreed between him, John Keller the committee, and Jacob Keller the defendant, that John should give to the defendant the power of attorney to collect the money due in Ohio, and that the defendant should

retain it till the plaintiff should be released from his suretyship. The contract, as stated by the only witness who testified on the subject, was as follows: "that Jacob should go to Ohio, receive the money, and retain it until Samuel Rhoads gave John Keller an order to draw it. In the mean time, while Jacob was in the west, John was to endeavour to release Rhoads from the bond." In pursuance of this arrangement, the defendant, on the 9th of February 1846, collected the money due in Ohio, amounting to $405.95, but, instead of retaining it, paid it over to John Keller, the committee, in June of the same year. The plaintiff was not discharged from his suretyship. In April 1858 a report of an auditor upon the account of the committee of the lunatic was filed and confirmed, showing a balance in his hands of $523.13, and suit was then brought upon his bond. Before judgment was recovered the present suit was brought against Jacob Keller to recover the money which he had collected in Ohio in 1846, under the power of attorney given to him by the committee of the lunatic. On the trial in the court below, several points were propounded to the court, and the errors assigned here are to the answers which were given.

In answer to the third, fifth, and sixth points of the defendant, the court instructed the jury that the action, being for money had and received, might be sustained by the plaintiff, and that the facts showed a sufficient consideration for the promise of the defendant. If the Statute of Limitations was not a bar to the recovery, the points were rightly answered. It cannot be questioned that a promise by a principal to indemnify his surety has sufficient consideration upon which to rest in the relation of the parties. Even before the surety has been damnified, there is a moral obligation incumbent on the principal to protect him—an obligation which ripens into an implied legal one so soon as the surety has paid on behalf of the principal. It springs out of the contract of suretyship. If, therefore, a principal deposit funds with a bailee for the protection of a surety, his act is not done without consideration, and the receipt of the funds is in itself a consideration for a promise by the bailee to pay to the surety. In the case now in hand it cannot be objected that the consideration did not move from the plaintiff, for it was indirectly through his agency that the money came to the hands of the defendant. And even if it were not so, the defendant has received money deposited with him by the principal for the use of the plaintiff. It is indubitably settled that if one pay money to another for the use of a third person, or, having money belonging to another, agree with that other to pay it to a third, action lies by the person beneficially interested: Blymire v. Boistle, 6 Watts 182. It is of no importance to inquire whether the plaintiff could have prevented the receipt of the money by the committee of the

[Keller *v.* Rhoads.]

lunatic. Let it be admitted that he could not, it is still a fact established by the verdict of the jury that John Keller caused to be placed in the defendant's hands a sum of money to indemnify the surety. For so doing John Keller had received a consideration. The defendant then became the bailee of the plaintiff, and not the mere agent of John Keller, and in consideration of his receipt of the money he agreed to hold it for the use and subject to the order of the plaintiff.

Was, then, the Statute of Limitations a defence? The court instructed the jury that it was not, and of this the plaintiff in error complains. If the statute was not applicable to the claim of the plaintiff, it is not because the defendant was a trustee in any such sense as to be beyond its protection. In a certain sense he was a trustee, but the trust was not one enforceable only in equity. The plaintiff has himself resorted to a court of law. Those trusts only are without the operation of the statute which are exclusively cognisable in a court of equity: Kane *v.* Bloodgood, 7 Johns. Ch. Rep. 110; Zacharias *v.* Zacharias, 11 Harris 455. But even in a court of law the statute does not begin to run until a plaintiff's right of action has accrued. Now in this case, if the money had been deposited with the defendant, to be paid over unconditionally and immediately to the plaintiff, the right of action would have accrued on the 9th of February 1846, when it was received. But such was not the contract. The money was to remain with the defendant. The agreement contemplated his retaining it in custody until the plaintiff should be discharged from his liability, or until he should be damnified. Until the liability of the plaintiff was fixed he could not have sued the defendant; and that liability was not fixed until 1858, when the account of the committee was settled. Our only doubt upon this subject arises from the fact that the declaration is not founded upon the special contract, but upon a general *indebitatus assumpsit.* Were we, however, to reverse upon this ground, the declaration would be amendable, and the statute would then be clearly no protection. Even as it is, the special contract shows that the use in favour of the plaintiff arose only when the plaintiff's liability was fixed only within six years.

The conditional verdict, it must be admitted, was a novelty, founded upon such a declaration; but it is a novelty of which the defendant cannot complain. It enures to his benefit, rather than to his injury.

The judgment is affirmed.